UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RANDOLPH W. MYRICK** | **CIVIL ACTION** |
| **VERSUS** | **NO. 10-1792** |
| **MARLIN GUSSMAN, DR. S. GORE (MEDICAL ADMINISTRATOR, ORLEANS PARISH)** | **UNITED STATES MAGISTRATE JUDGE KAREN WELLS ROBY** |

## ORDER AND REASONS

This matter was before the undersigned United States Magistrate Judge for a non-jury trial on October 31, 2011, with consent of the parties pursuant to 28 U.S.C. § 636(c).[1] For the reasons orally assigned, as amended and supplemented herein, the Court has ordered the dismissal of the 42 U.S.C. § 1983 claims brought by the plaintiff, Randolph W. Myrick ("Myrick") and finds in favor of the defendant, Dr. Samuel Gore.

**I.    Findings of Fact based on the Testimony and Evidence at Trial**[2]

Myrick testified at trial that he is currently 35 years old, and is serving a sentence for a simple burglary and a parole violation from September 22, 2009. He anticipates his release on November 14, 2011, however, he has another pending charge for simple burglary.

---

[1] Rec. Doc. Nos. 25, 26.

[2] To the extent the findings of fact are conclusions of law, and vice versa, they are deemed so and accepted.

He further testified that, while housed in the Orleans Parish Prison system ("OPP"), he suffered with eye pain, migraine headaches, and bleeding eyes, because the prison medical department failed to provide him with necessary eyeglasses and treatment. He testified that, as a result, he suffered difficulty reading, writing, and watching television.

He also testified that, after his incarceration at OPP, he began to experience headaches and eye pain. He filed numerous sick call requests and administration grievances in an effort to be examined by an eye doctor. He was seen on numerous occasions in 2010 by Doctors Gautreaux and DiLeo, both doctors at OPP. At various times, he was given ibuprofen, Tylenol, and naprosin for treatment of his headaches and given other medication for high blood pressure. He indicated that these medications bothered his stomach. As a result, he did not always take the medication when it was provided to him. When he did take the medication, he received temporary relief from the headaches.

He stated that he was seen by Dr. Gautreaux in February of 2010, but no appointment was made for him to see an eye doctor. He eventually saw Dr. DiLeo in August of 2010, and the doctor requested an appointment for him at the LSU Medical Center.

When he was eventually taken to the eye clinic at the LSU Medical Center in October of 2010, he was found to be near-sighted and to have an infection in his eye. He was given prescriptions for eye drops, for eye ointment, and for eyeglasses. He received the medication from the prison but he was never provided with the eyeglasses. The medication, however, cleared the infection after two or three weeks.

On November 9, 2010, he was transferred to the custody of the Louisiana Department of Corrections ("DOC"). He advised the officials at Elayn Hunt Correctional Center about his need

for eyeglasses. He soon was transferred on November 22, 2010 to Forcht-Wade Correctional Center where he was seen by an optometrist in December of 2010. He received glasses from that facility in January of 2011. Since that time, he has not required medication for headaches except occasionally, and he has been taken off of blood pressure medication.

On cross-examination, Myrick acknowledged that he had glasses before his arrest and that they were taken from him when he arrived. He testified that, when he received the prescription from the LSU Medical Center, he was unable to have them filled on the outside and brought to him. He stated that he was indigent and could not afford to buy glasses. He also testified that he was no longer in contact with his family so as to have someone bring him anything from the outside. He also conceded that he did not notify anyone at the prison that he had glasses prior to his incarceration until much later.

He further testified that, on May 10, 2010, he filed a grievance request to see SID Officer Lance Wade to discuss the problems he had with the medical department. When he spoke with Officer Wade, he was advised that his glasses were not in his property box.

Myrick also acknowledged that he was seen by medical personnel at the prison each time he filed a request for care; however, he wanted to be seen by an eye specialist or eye doctor. He also stated that he was told several times that he was awaiting an appointment, although he was never taken to a real eye doctor. He also conceded that he complained about his eye infection for the first time to the prison medical staff just shortly before he was sent to the LSU Medical Center.

In discussing his medical records and his grievances with the Court, Myrick acknowledged that he received a response to each of the grievances he felt were relevant to this case. These complaints were numbered as follows: No. 638467; No. 638472; No. 640993; No. 643576; No.

653007; No. 657552; No. 659052; and No. 644087.[3] Myrick described and read each grievance complaint and the response thereto into the record.

In Grievance Complaint No. 643576, dated May 4, 2011, Myrick testified that he requested to see the OPP medical director concerning his medical condition. He stated that he wanted to see the medical director, known to him as Dr. Gore, because as the medical director, he was responsible for getting him the proper care. He believed that the person he spoke with in response to the complaint was Dr. Gore. Although the grievance response indicates that he spoke with Dr. J. Hamm, Myrick insisted that he spoke with Dr. Samuel Gore. The written response to the complaint indicated:[4]

> I spoke to you and reviewed your concerns. You have a pending appointment to see a medical provider who shall address your concerns. Also you might contact the property room to request the eye glasses you are alleging they have.

Myrick also testified that "Dr. Gore" told him at this visit that it might take a while to get him to a specialist. Myrick further stated that this suggestion is what led him to write the other grievance, No. 644087, so that he could meet with SID Officer Lance Wade. Myrick also recognized that, while he was eventually referred to the LSU Medical Center, he never received eye glasses from the OPP medical department.

Myrick also called the defendant Dr. Samuel Gore to the stand. Dr. Gore acknowledged that he did not have a "degree" in ophthalmology. He also explained that, to obtain an outside referral appointment, a prison medical care provider must first find a medical need. If one is found, the

---

[3] A copy of Myrick's medical records and each of these grievance complaints was provided to the Court by defense counsel and placed into the record as Plaintiff's Exhibit One (medical records) and Plaintiff's Exhibit Two-in globo (grievance records).

[4] Myrick read this response into the record and the written response can be found in Plaintiff's Exhibit Two-in globo.

4

prison staff submits an appointment request to the LSU clinic. The staff there reviews the request, and if it is not rejected, the LSU clinic schedules the appointment and notifies the prison staff. He also testified that OPP does provide prescription reading glasses.

## II. Claims Against Dr. Gore

At the close of the plaintiff's case, counsel for the defendants orally moved for judgment on partial findings as a matter of law pursuant to Federal Rule of Civil Procedure ("Rule") 52(c) seeking dismissal of the medical indifference claims against Dr. Gore.[5] The motion was granted and the Court ordered that the plaintiff's claims against Dr. Gore be dismissed with prejudice. In support of that ruling, the Court gave oral reasons, which are amended and supplemented herein.

### A. Standards of Review for Motion for Judgment on Partial Findings under Rule 52(c)

Rule 52(c) provides that "[i]f during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party." *Bodin v. Vagshenian*, 462 F.3d 481 (5th Cir. 2006). Judgment on partial findings entered under Rule 52(c) is to be made after the district court has heard all of the "evidence bearing on crucial issues of fact." *Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 632 (5th Cir. 2001) (*quoting* Fed. R. Civ. P. 52(c)).

The District Court "'is to weigh the evidence, resolve any conflicts in it, and decide for itself where the preponderance lies.'" *Aubey v. Noble Drilling*, 24 F.3d 240, 1994 WL 242570, *1 (5th Cir. May 25, 1994) (Table, Text in Westlaw) (quoting 9 Wright & Miller, Federal Practice and Procedure: Civil § 2371 at 225). When the findings of fact are based on determinations regarding

---

[5]Rec. Doc. No. 30, Trial Minutes.

5

the credibility of witnesses, Rule 52 demands that even greater deference be given to the trial court's findings. *Id*., at 632 (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985)).

**B.     Analysis**

Counsel for defendants moved the Court to dismiss Myrick's claims against Dr. Gore on the grounds that an action under 42 U.S.C. § 1983 does not lie where only supervisory liability is urged. Counsel further argued that, even assuming that Dr. Gore spoke with Myrick on May 4, 2010, there was no showing of a deliberate indifference. The testimony and records showed that, as indicated on the grievance response, Myrick was sent for an evaluation appointment by an OPP physician, and he was told to check with the property department for his eyeglasses. He also was eventually seen for an examination at the LSU medical clinic.

In response to the motion, Myrick argued that he wanted to see Dr. Gore at the prison, because he was told that the medical director had to approve any appointment made with a specialist. He stated that he was told the matter would take some time, but he did not expect that the delay in getting to the eye doctor would take from May to August, or actually until October 7, 2010. He argued that it should not have taken that long for the OPP medical department to get him to a specialist.

Deliberate indifference by prison personnel to a prisoner's medical needs is actionable under § 1983 pursuant to the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976). A prison official, including a physician, is deliberately indifferent if he or she has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see also Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir.2004) (the

6

standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury); *Washington v. La Porte County Sheriff' Dep't*, 306 F.3d 515 (7th Cir. 2002) (same).

In *Estelle*, the Court held that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Id.* at 104. This is true where the indifference is manifested by prison officials or prison healthcare providers in their response to the prisoner's needs. It is also true where the indifference is manifested by prison officials and healthcare providers in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id.*

In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id.* Further, disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Therefore, inadequate medical treatment of inmates may, at a certain point, rise to the level of a constitutional violation, while malpractice or negligent care does not. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action."); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or *failing to supply* medical treatment would not support an action under Section 1983." (emphasis added)); *see also Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989).

However, a disagreement with a course of treatment, including the failure to take an x-ray the patient wanted, does not state a claim for Eighth Amendment indifference to medical needs. *Accord Mendoza*, 989 F.2d at 195. Even the delay in providing care, regardless of the length of the

7

delay, requires the plaintiff to show a deliberate indifference to a serious medical need in order for it to rise to the level of a constitutional violation. *Wilson v. Seiter*, 501 U.S. 294 (1991); *see also Estelle,* 429 U.S. at 104-05.

In this case, Myrick conceded, and the evidence demonstrates, that he was in fact examined for his complaints each time he made a request for care related to his headaches and eyes.[6] A review of the medical records submitted at trial confirm this treatment described by Myrick at trial. He also acknowledged at trial that, although he did not receive eyeglasses from OPP, he was transferred to a DOC facility shortly after the prescription was given to him at the LSU Medical Center. This contributed to OPP's and Dr. Gore's inability to provide him with anything further.

Myrick also conceded that he did not inform the OPP medical staff that he had glasses prior to his incarceration. He also made no effort to locate his own glasses in the property room until after Dr. Gore, or Dr. Hamm, advised him to do so on May 4, 2010.

The testimony and the medical and grievance records do not demonstrate an intentional indifference to Myrick's medical needs. As Myrick argued to the Court, the gist of his complaint against the medical department, and specifically Dr. Gore, is the delay in getting him to see an eye doctor which resulted in a delay in providing, or inability because of his transfer to provide, him with eyeglasses prescribed in October of 2010. This mere delay, however, does not rise to the level of a constitutional violation. *See Wilson*, 501 U.S. at 294; *see also Estelle,* 429 U.S. at 104-05.

Myrick was treated for, and often rejected the medication for, his headaches, which the prison doctors attributed in part to high blood pressure. He does not allege and there is no indication

---

[6]*See* Plaintiff's Exhibit One.

that the delay in receiving the glasses, which he has had since January 2011, caused him any undue repercussions.

Furthermore, Myrick acknowledged that the eye infection he mentioned had only been reported to the prison medical staff shortly before his visit at the LSU Medical Center. In other words, there was proof of delayed treatment related to the eye infection, which was addressed by the LSU doctor. Furthermore, as testified to by Dr. Gore and acknowledged by Myrick, the scheduling of a requested appointment was at the discretion of the LSU Medical Center. Any delay between the request and the actual appointment date was not attributable to the OPP medical staff or Dr. Gore.

Accordingly,

**IT IS ORDERED** that Dr. Gore's oral motion for judgment on partial findings pursuant to Fed. R. Civ. P. 52(c) is **GRANTED**.

**IT IS FURTHER ORDERED** that the 42 U.S.C. § 1983 claims of intentional medical indifference brought by the plaintiff, Randolph W. Myrick, against the defendant, Dr. Samuel Gore, are **DISMISSED WITH PREJUDICE**, each party to bear their own costs.

New Orleans, Louisiana, this 18th day of November 2011.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**